# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOAN CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. _____ |
| v. | ) |
| | ) |
| UNUM LIFE INSURANCE | ) |
| COMPANY OF AMERICA and | ) |
| UNUM GROUP CORPORATION, | ) |
| | ) |
| Defendants. | ) |

_____

**COMPLAINT**
_____

Comes now the Plaintiff, Joan Clark, who brings this action against Unum Life Insurance Company of America ("Unum") and the Unum Group Corporation ("Unum Group"), collectively ("Defendants") for violations of the Employment and Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*., ("ERISA"). This Complaint challenges Defendants' unlawful denial of Plaintiff's claim for long-term disability benefits, despite medical and other supporting evidence demonstrating that she qualified for those benefits under the terms of the policy, specifically Policy number 225814 ("Policy"). Plaintiff is filing this action to recover past benefits and future benefits under the Policy, to enforce the present rights existing therein, to declare her rights under the terms of the policy, and to recover costs and attorney's fees as provided by ERISA.

## PARTIES

1. Plaintiff Joan Clark is a citizen and resident of Winchester, Tennessee in Franklin County. Plaintiff was a participant in an ERISA Employee Welfare Benefit Plan ("Plan") administered by Unum.

2. Defendant Unum Life Insurance Company of America is a foreign corporation doing business in Tennessee. Unum is the entity that administered the Plan and Policy, insured the Plan's benefits, and denied Plaintiff's claim for long-term disability benefits.

3. The Defendant Unum Group Corporation is a Delaware corporation whose principal place of business is in Tennessee. The Unum Group exercised authority and/or control in regard to the management or disposition of the Plan's assets and, accordingly, is a "fiduciary" under 29 U.S.C. § 1002(21).

4. Furthermore, the Defendant Unum Group, in acting as a fiduciary and, in providing services to the plan, is a "party of interest" under 29 U.S.C. § 1002(14).

## JURISDICTION AND VENUE

5. Because this action arises under ERISA, the court has original subject matter jurisdiction under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

6. Venue is proper in this District because Unum does business in the state of Tennessee and, thus, is subject to the court's personal jurisdiction with respect to the civil action.

## THE POLICY

7. Plaintiff was employed with Aerospace Testing Alliance as an instrument technician and lead instrument technician.

8. As a part of her employment, Plaintiff had long-term disability coverage through a Policy administered by Unum. The Policy is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1), and was effective on October 1, 2011.

9. Prior to the effective date of the Policy, Plaintiff had been insured by prior carriers who offered long-term disability coverage through her employer.

10. Under the terms of the Policy, Plaintiff is guaranteed continuity of coverage and is entitled to long-term disability benefits if she meets the definition of disability.

11. Under the Policy, a participant is disabled if she is limited from performing the material and substantial duties of her regular occupation due to sickness or injury, and has a 20 percent or more loss in indexed monthly earnings due to the same sickness or injury.

### THE PLAINTIFF'S JOB

12. At the time Plaintiff's employment ended at Aerospace Testing Alliance on February 12, 2016, Plaintiff Joan Clark worked full-time as a lead instrument technician at Arnold's Airforce Base in Tullahoma, Tennessee.

13. In her job as instrument technician, Plaintiff worked on uninstalled fighter plane engines to prepare them for potential problems that could impact a plane during flight.

14. Plaintiff's job was physically and cognitively demanding and required her to, *inter alia,* scale ladders, work in extreme temperatures, lift objects weighing at least 20 pounds, install wires, and use her hands and fingers to calibrate, test and repair plane engines. Plaintiff was also required to work with a variety of instruments and devices used in aeronautical tests and research projects.

## THE PLAINTIFF'S DISABILITY

15. In or around 1998, Plaintiff Joan Clark was diagnosed with Lupus, which causes debilitating fatigue, joint pain, low grade fevers, and body aches, among other symptoms.

16. In or around 2005, Plaintiff developed progressive Neuropathy, which causes nerve loss and damage, overall body weakness, difficulty walking, and decreased coordination, among other symptoms.

17. In addition to her Neuropathy and Lupus, Plaintiff also suffers from Essential Tremor, which often causes her hands to shake, and carpal tunnel syndrome, which causes numbness in her fingers and hands, and weakness of her thumb.

18. Plaintiff has also been diagnosed with Fibromyalgia, resulting in extreme fatigue, among other symptoms, and Lumbar Degenerative Disk Disease, which has resulted in a limited range of motion in her back.

19. In October 2011, Plaintiff suffered a severe relapse of Lupus and received short-term disability benefits while she was unable to perform her job duties. Around February 2012, Plaintiff began receiving long-term disability benefits as a result of her medical condition.

20. Plaintiff returned to work in May 2012, although her Lupus was not in remission.

21. In June 2012, Plaintiff could no longer perform her job duties, and again was forced to take medical leave. Her rheumatologist at the time, Dr. Joseph Huffstutter, performed blood work and confirmed Plaintiff's Lupus was still not in remission.

22. In September 2012, Plaintiff was admitted into the Medical Center of Manchester after suffering stomach problems, severe dehydration and weakness. Plaintiff was

admitted into the hospital for five days where she was fed intravenously and treated with antibiotics.

23. On or around October 24, 2012, Plaintiff returned to work against the advice of her treating physician, Dr. Albert Brandon.

24. Plaintiff's overall medical condition continued to decline after she returned to work. As a result of her deteriorating condition, including, but not limited to, her worsening Lupus and progressive Neuropathy, Plaintiff's supervisor, Robert Grimes, directed her co-workers to cover for her and perform the more physically demanding tasks of her job so that she could rest. On some days, Mr. Grimes simply sent Plaintiff home when he noticed that she looked exhausted.

25. Because of Plaintiff's worsening condition, Plaintiff was unable to perform the material and substantial duties of her job, including but not limited to, climbing ladders, lifting objects, installing instrumentation, connecting wires, or performing any kind of assembly work. Plaintiff also regularly missed days from work as a result of her condition, and her inability to concentrate hindered her ability to focus on the cognitive aspects of her job.

26. As a direct result of her medical condition, Plaintiff ended her employment with Aerospace Testing Alliance. Her last day of work was February 12, 2016.

27. Plaintiff has suffered a 100 percent loss of income after she had to end her employment due to her medical condition.

### THE CLAIM FOR LONG-TERM DISABILITY BENEFITS

28. After receiving short-term disability benefits, Plaintiff filed a claim ("Claim") for long-term disability benefits on or around May 15, 2016.

Page 5 of 14
Case 3:17-cv-01119   Document 1   Filed 08/07/17   Page 5 of 14 PageID #: 26

29. Unum denied Plaintiff's Claim on July 28, 2016.

30. On January 20, 2017, Plaintiff filed an appeal ("Appeal") to her denial of benefits.

31. Unum denied her Appeal on April 4, 2017.

32. In denying Plaintiff's Appeal, Unum set out different reasons for disapproving Plaintiff's claim for long-term disability benefits than it did when it denied her Claim on July 28, 2016. In addition, Unum's denial letter included reasons for denying the Appeal that were factually incorrect and easily refutable.[1]

33. After Unum sent its April 4, 2017 letter denying Plaintiff's Appeal, Plaintiff, through counsel, sought and received Unum's permission to submit additional medical records and other evidence supporting her long-term disability claim.

34. On April 28, 2017, Plaintiff began submitting additional materials in support of her claim.

35. On May 23, 2017, after receiving Plaintiff's additional medical records and other evidence supporting her long-term disability claim, Unum upheld its decision denying Plaintiff's claim for benefits.

36. All medical and employment-related materials Unum received from Plaintiff or Plaintiff's medical providers through May 23, 2017 are a part of this administrative record.

---

[1] To take one illustrative example, Unum noted in its letter denying Plaintiff's Appeal that "there has been no consistent treatment" with chiropractic therapy. Unum made no reference to chiropractic therapy in its July 28, 2016 denial letter, and, as a result, Plaintiff did not have an opportunity to address this issue in its initial appeal. Following its appeal, Plaintiff provided documentation to Unum that she had seen a chiropractor 33 times since 2011, with the majority of those visits occurring since 2014.

37. As a part of Plaintiff's Claim and Appeal for long-term disability benefits, Dr. Albert Brandon, Plaintiff's treating physician for over 15 years, provided information to Unum regarding her medical condition.

38. In an Attending Physician Statement he completed on February 16, 2016, Dr. Brandon filled out a checklist identifying over 12 different Lupus symptoms Plaintiff Joan Clark had since her last doctor's visit including pain in the chest, infections, muscle weakness, joint stiffness, memory problems and "severe" fatigue.

39. In the February 16, 2016 Attending Physician Statement, Dr. Brandon stated that Plaintiff is unable to work overtime, or perform "climbing", "stooping" or "standing." Dr. Brandon also stated that because of Ms. Clark's conditions, she requires periodic periods of increased rest and "needs to not work."

40. As a part of Plaintiff's Appeal, Plaintiff submitted a letter from Dr. Brandon, dated December 16, 2016, in which he stated that based on his assessment of Plaintiff's physical condition, he does not believe that she could work a full-time job, even one that is less physically demanding than the one she had for nearly all of her career.

41. In Dr. Brandon's December 16, 2016 letter, Dr. Brandon concluded that Plaintiff's condition is noticeably declining, that she is often unable to move her joints without experiencing extreme pain, that she can no longer lift objects that are ten or more pounds, and that she is at a risk of falling when she scales ladders and climbs stairs. Dr. Brandon also stated that if Plaintiff continued to work she could become crippled.

42. Plaintiff later submitted another letter from Dr. Brandon, dated April 21, 2017, in which he responded to Unum's letter denying Ms. Clark's Appeal. In this letter, Dr. Brandon explained why he disagreed with several of Unum's findings and contentions.

43. In her Appeal for long-term disability benefits, Plaintiff submitted a February 10, 2017 letter from Dr. Peter Donofrio, a physician and Professor of Neurology at Vanderbilt University Medical Center.

44. Dr. Donofrio reviewed Plaintiff's nerve conduction tests, the past and present medical history of Joan Clark and a description of her instrument technician responsibilities.

45. In his letter, Dr. Donofrio concluded that Plaintiff is disabled from her position as an instrument technician. He further concluded that her condition has shown "clear worsening" and that her carpal tunnel syndrome and tremor in her hands makes the fine manipulation of small objects even more difficult.

46. In her Claim and Appeal for long-term disability benefits,[2] Plaintiff submitted medical records and correspondence showing, *inter alia*, that she had been prescribed narcotics to manage her neuropathy, had received steroid injections in her knees, had regularly visited a chiropractor, had been under the care of rheumatologists, and had to discontinue use of a medication prescribed for her Lupus after she sustained damage to her retina.

47. In support of her Claim and Appeal, Plaintiff also submitted her own affidavits as well as an affidavit from Robert Grimes, her former supervisor at Aerospace Testing Alliance.

---

[2] For the purposes of this Complaint, Plaintiff's claim for long-term disability benefits encompasses all medical records, correspondence, work-related documents and other relevant records Plaintiff submitted and that Unum obtained through May 23, 2017.

## *UNUM'S UNLAWFUL REVIEW OF PLAINTIFF'S CLAIM FOR BENEFITS*

48. The medical records, documents, employment information, correspondence and affidavits (collectively, "Claim Documents") that were submitted as part of Plaintiff's claim for long-term disability benefits illustrate that Plaintiff's health has declined over time, and, as a result, she is unable to perform the material and substantial duties of her regular occupation.

49. The Claim Documents included in Plaintiff's Claim for long-term disability benefits also illustrate that the symptoms of each of her conditions compound each other and exacerbate her overall condition. As a result, Plaintiff is unable to perform the material and substantial duties of her former job.

50. Unum's primary grounds for denying Plaintiff's Claim for long-term disability benefits were that Plaintiff has the functional capacity to perform her regular occupation.

51. In determining that Plaintiff could perform the material and substantial duties of her regular occupation, Unum relied on the opinion of Dr. Jonathan McAllister, a paid medical consultant with Unum, who worked for the company from May 2006 through May 2017.

52. Dr. McAllister never examined Plaintiff.

53. Dr. McAllister never spoke with Plaintiff's treating physician.

54. In evaluating Plaintiff's Claim and Appeal, Unum did not order or request that Plaintiff undergo an Independent Medical Exam.

55. Unum did not ask to speak with any of Plaintiff's colleagues or supervisors to determine if Plaintiff could perform the material and substantial duties of her regular occupation.

56. Unum did not offer any objective evidence showing that Plaintiff could meet the physical and cognitive demands of her regular occupation.

57. In evaluating Plaintiff's Claim and Appeal, Unum did not consult with a physician who specializes in treating Lupus, Neuropathy, and/or Essential Tremor.

58. In denying Plaintiff's Claim and Appeal, Plaintiff Unum did not address the known side effects of Plaintiff's medications and whether they compound the symptoms of her diagnosed conditions.

59. In denying Plaintiff's Claim and Appeal, Unum did not address whether the symptoms of her diagnosed conditions have a cumulative effect on her overall condition and her ability to perform her regular occupation.

60. In evaluating Plaintiff's Claim and Appeal, Unum did not offer any objective evidence showing that Plaintiff could meet the physical and cognitive demands of her regular occupation without missing a significant amount of time from work due to her overall condition.

61. In evaluating Plaintiff's Claim and Appeal, Unum did not provide any objective medical evidence disputing Dr. Brandon's finding that Plaintiff could no longer lift objects weighing more than 10 pounds.

62. In evaluating Plaintiff's Claim and Appeal, Unum did not make any written mention of Dr. Brandon's finding that Plaintiff could no longer lift objects weighing more than 10 pounds.

63. In evaluating Plaintiff's Claim and Appeal, Unum did not make any written mention of Dr. Brandon's finding that her condition deteriorated over the last 3-5 years to the point that she regularly has "bad days," during which she cannot get out of bed.

64. In evaluating Plaintiff's Claim and Appeal, Unum did not provide any objective medical evidence disputing Dr. Brandon's conclusion that Plaintiff would struggle to meet the demands of even a sedentary job, much less those of a lead instrument technician, unless an employer were willing to accommodate her many challenges.

65. In failing to address the findings of Plaintiff's treating physician, Unum ignored the requirements of its own claims manual which states that Unum has an obligation to give "deference" to the opinion of the claimant's attending or treating physician.

66. In evaluating Plaintiff's Claim and Appeal, Unum did not address, or make any written mention of Dr. Donofrio's analysis of Plaintiff's nerve conduction reports in any part of the administrative record, other than to simply acknowledge that the reports were reviewed.

67. In evaluating Plaintiff's Claim and Appeal, Unum did not address or make any written mention of the affidavit of Robert Grimes in any part of the administrative record, other than to acknowledge that he gave an affidavit in support of Plaintiff's claim.

68. Although Plaintiff provided Unum with a job posting that detailed the requirements of the instrument technician position that she previously held, Unum relied on a general description of Plaintiff's regular occupation.

69. In evaluating Plaintiff's Claim and Appeal, Unum did not address or make any written mention in the administrative record of why it chose not to rely on the job posting the Plaintiff provided for an accurate description of Plaintiff's regular occupation.

70. In denying Plaintiff's Claim and Appeal, Unum noted that Plaintiff's driving privileges had not been suspended.

71. Whether Plaintiff's driving privileges were suspended or not has no bearing on her disability status as defined by the Policy.

72. The material and substantial duties of Plaintiff's regular occupation are more physically and cognitively demanding than driving an automobile.

73. In evaluating Plaintiff's Claim and Appeal, Unum did not address, or make any written mention in the administrative record, of how Plaintiff's Lupus resulted in her missing a substantial amount of time from work from October 2011 through October 2012.

74. After receiving Unum's final decision on Plaintiff's Appeal, Plaintiff, through counsel, requested relevant documentation pursuant to 29 C.F.R. § 2560.503-1 on June 30, 2017.

75. In responding to Plaintiff's request, Unum failed to provide some of the requested documentation including all documents or communications exchanged or generated in the course of claims administration and review by vendors and consultants, and documents related to the bonus and incentive compensation program applicable to Unum's claims handlers at all levels.[3]

76. In her Claim and Appeal for long-term disability benefits, Plaintiff provided ample evidence illustrating the material and substantial duties of her regular occupation, and how her Lupus, Neuropathy and other conditions prevent her from performing those duties.

---

[3] To the extent Unum did not have any of the requested documents or did not believe that such documents were relevant under 29 C.F.R. § 2560.503-1, it did not state as much in its June 30, 2017 response letter to Plaintiff's counsel.

Nevertheless, Unum conducted a paper review of her claim and Appeal and refused to give deference, or any kind of consideration, to Plaintiff's treating physician of over 15 years.

77. Because Unum provided new reasons for denying Plaintiff's claim when it denied her appeal than it did when it denied her initial claim, Plaintiff was denied a full and fair review of her claim and appeal as required by 29 § U.S.C. 1133 and 29 C.F.R. 2560.503-1.

78. For the foregoing reasons, Unum's denial of Plaintiff's claim is unreasonable, arbitrary and capricious and, as a result, Unum deprived Plaintiff of the long-term disability benefits she is due under the terms of the Plan and Policy.

79. As a direct and proximate result of the Defendants failing to provide long-term disability benefits to Plaintiff, and in failing to provide a full and fair review of her claim and appeal, Plaintiff has been damaged in the amount equal to the amount of benefits to which Plaintiff would have been entitled to under the Policy, in an amount equal to future benefits payable while Plaintiff remains disabled under the terms of the Policy, and additional damages to be proven in the trial of this matter.

WHEREFORE, Plaintiff prays for the following relief:

(a) Award Plaintiff long-term disability benefits due and payable under the Policy, past and present, plus interest.

(b) Enter a declaratory judgment as to Plaintiff's entitlement to future benefits and an Order directing Unum to pay all long-term disability benefits until Plaintiff's coverage expires under the terms of the Policy.

(c) Reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

(d) An Order requiring Unum to provide all documents previously requested by the Plaintiff.

(e) Alternatively, an Order requiring Unum to consider all the evidence submitted by Plaintiff and how it impacts Plaintiff's ability to work her regular occupation.

(f) Any other relief that this Honorable Court deems appropriate.

Respectfully submitted,

*/s/ Matthew E. Pulle*

J. Ross Pepper (BPR #14444)
Matthew E. Pulle (BPR #31271)
PEPPER LAW, PLC
201 4th Avenue North, Suite 1550
Nashville, Tennessee 37219
(615) 256-4838
*rpepper@pepperlawplc.com*
*mpulle@pepperlawplc.com*

**ATTORNEYS FOR PLAINTIFF**